IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHASE XANDER,

    Plaintiff,

v.                                          Civ. No. 17-557 GBW/SMV

BRITT SNYDER, *et al.*,

    Defendants.

## ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT

This matter comes before the Court pursuant to Defendants' Motion for Review and/or Approval of Settlement (*doc. 15*). The Court held a competency and fairness hearing on the motion on January 18, 2018. *Doc. 17*. The Court issued an oral ruling granting the motion at the close of the hearing. *Id.* at 7. This Order memorializes that ruling and provides the factual and legal basis therefor.

**I.    BACKGROUND**

Plaintiff, proceeding *pro se*, filed the underlying civil litigation in state court on April 21, 2017. *See doc. 1-2*. In her Complaint, Plaintiff alleges the following facts. She called for an ambulance due to continued pain and an infection related to a serious dental procedure on April 10, 2017. *Id.* at 1. Officials from the Chaves County Sheriff's Office and the Midway Fire Department in Roswell responded to her call along with an ambulance from Superior Ambulance, and an unidentified EMT forced her into the ambulance. *Id.* at 1-2. Once she was in the ambulance, one of the Superior Ambulance

employees began verbally harassing and assaulting her, and the driver refused to bring her to her hospital of choice. *Id.* at 2-3. Further, she alleges that the employee who forced her into the ambulance has harassed her and slandered her for years, but that the Sheriff's Office has refused to take her reports of these incidences seriously. *Id.* at 3-5. Generally, Plaintiff alleges that Defendants are involved in a conspiracy to silence her by threatening to arrest her in response to her attempts to obtain information on various officials and to file reports relating to various incidents of assault and/or harassment. *See id.* Defendants removed this action to federal court on May 16, 2017. *Doc. 1*.

Counsel for Defendants informed the Court that the parties had tentatively reached a settlement agreement on December 28, 2017, and that Defendants believed court approval of the settlement may be necessary. Accordingly, the Court held a telephonic status conference with the parties on January 10, 2018. *Docs. 12, 14*. During that conference, defense counsel informed the Court that Plaintiff had been adjudicated incompetent to stand trial in several state court criminal cases. *See doc. 14* at 2. These adjudications of incompetence caused Defendants concern that any settlement agreement with Plaintiff might be voidable on the basis that she lacked competency to contract. *Id.*

Based on the concerns raised by Defendants, the Court determined that an in-person hearing was necessary to establish Plaintiff's competency to contract and the fairness of the proposed settlement agreement. *Id.* at 2-3. Because the parties mutually

desired to waive the appointment of a guardian ad litem, the Court instructed Defendants to file a detailed motion setting forth the terms of the agreement and all pertinent factors bearing on the fairness of the agreement. The motion was filed on January 12, 2018, and the competency and fairness hearing took place on January 18, 2018. *Docs. 15, 17*.

Having considered the motion, the hearing testimony, and the Court's own interactions with Plaintiff, the Court finds that Plaintiff has the requisite mental capacity to sue and to contract under New Mexico law, and appointment of a guardian ad litem is therefore unnecessary to protect Plaintiff's interests. Moreover, having independently considered the relevant factors governing the fairness of settlement agreements generally, the Court finds that the settlement agreement is fair and reasonable. Therefore, the agreement will be approved.

II. ANALYSIS

**A. Appointment of a Guardian ad Litem under Rule 17(c) is not Necessary.**

As noted above, Plaintiff is proceeding *pro se*. Once defense counsel put the Court on notice that Plaintiff had been adjudicated incompetent in a criminal proceeding, that information triggered a duty of inquiry under Rule 17 to determine whether Plaintiff has the requisite capacity to bring suit in the first instance. *See, e.g.*, *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986) ("[Rule 17(c)] does not indicate the basis upon which a court determines the predicate fact that a party not already legally

3

adjudicated to be so, is presently 'incompetent.' Obviously if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought into play."); *Powell v. Symons*, 680 F.3d 301, 308 (3d Cir. 2012); *Ferelli v. River Manor Health Care Center*, 323 F.3d 196, 201 (2d Cir. 2003); *Dangim v. FNU LNU, USA Law Enf't*, No. CV 16-0812 JB/SCY, 2017 WL 3149359, at *2-*3 (D.N.M. June 2, 2017). Rule 17(c)(2) provides that an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem, and that the Court "must appoint a guardian ad litem—or issue another appropriate order—to protect a[n] . . . incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c).

"Rule 17(c) flows from the general duty of the court to protect the interests of infants and incompetents in cases before the court." *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989). However, "[t]he decision as to whether or not to appoint such a special representative rests with the sound discretion of the district court and will not be disturbed unless there has been an abuse of its authority." *Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir. 1982) (citing *Hoffert v. General Motors Corp.*, 656 F.2d 161, 164 (5th Cir. 1981)). *See also Foe v. Vanderhoof*, 389 F. Supp. 947, 957 (D. Colo. 1975) ("The suggestion in Rule 17(c) that a guardian be appointed to represent an infant or incompetent in court is not mandatory"). The Court finds that appointment of a guardian ad litem is not necessary here for several reasons.

4

First, both parties wish to waive the appointment of a guardian ad litem. *See doc. 14* at 3. Plaintiff in particular desired a quick approval of the proposed settlement due to the exigent circumstance that the well providing running water to her home needed to be replaced. *Id.*; *doc. 17* at 6. Second, as just noted, while Rule 17 creates an obligation of the Court to protect minors and incompetent litigants, the rule explicitly allows the Court to "issue another appropriate order" to fulfill such obligation; appointment of a guardian ad litem is not required. Fed. R. Civ. P. 17(c). *See also Gardner by Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir. 1989) (explaining that the court may decline to appoint a guardian ad litem if the interests of the litigant in question—there, a child—"may be protected in an alternative manner[,]" but noting that "the cases and commentators appear unanimous in interpreting the ["another appropriate order"] provision of Rule 17(c) to mean that, if a court declines to appoint a guardian, it must act in some other way to protect the [litigant's] interests in the litigation.").

Third, and most significantly, at the time of the status conference, Plaintiff had thus far conducted herself competently before the Court, and had given no indication that she was unable to understand the proceedings or the terms of the proposed settlement agreement. In the context of federal civil litigation, the relevant inquiry regarding a litigant's competency to sue under Rule 17 is whether she is "mentally competent to understand the nature and effect of the litigation she has instituted." *Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971) (per curiam), *cert denied*, 404 U.S. 913

(1971); *Donnelly v. Parker*, 486 F.2d 402, 407 (D.C. Cir. 1973) (stating that Rule 17(c) may require an inquiry into the plaintiff's "capacity to understand the meaning and effect of the litigation being prosecuted in her name."). Plaintiff's conduct before the Court indicated that she fully understood both the nature and effect of the actions she had brought, and was capable of understanding the nature and effect of the settlement agreement. Indeed, Plaintiff initiated settlement negotiations by approaching defense counsel with a monetary offer, and she ably and intelligently questioned a particular condition suggested by defense counsel as part of the agreement. *See doc. 14 at 1-2; see also doc. 15-2 at 2, 5.*

Therefore, being sensitive to Plaintiff's exigent circumstance and inclined to agree with Plaintiff that her ability to intelligently pursue her claims evinced her competence, the Court determined that an in-person hearing to evaluate Plaintiff's competence along with an independent evaluation of the fairness of the settlement sufficed to satisfy its duty under Rule 17. *See Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005) ("[W]hen a substantial question exists regarding the mental competence of a party proceeding pro se, the proper procedure is for the district court to conduct a hearing to determine competence, so a guardian ad litem can be appointed, if necessary.").[1] *See also Eagan by Keith v. Jackson*, 855 F. Supp. 765, 782-83 (E.D. Pa. 1994)

---

[1] While setting a competency hearing under the present circumstances is the proper procedure in the Ninth Circuit, the Tenth Circuit has no such established procedure in place. However, the Court finds the Ninth Circuit's approach to be an appropriate way to ensure the protection of a potentially incompetent unrepresented litigant and accordingly follows that approach here.

(in the settlement approval context, declining to appoint a guardian ad litem despite conflict of interest between incompetent litigant and representative who brought suit, where the litigant was in need of money and the court had sufficient familiarity with the law and facts of the case to allow it to independently assess the merits of the settlement agreement).

For the following reasons, the testimony presented at the competency and fairness hearing persuades the Court that Plaintiff is competent to sue in her own name, and that appointment of a guardian ad litem is therefore unnecessary to protect Plaintiff's interests in the litigation. First, Plaintiff testified that she regularly sees a psychiatrist for treatment for post-traumatic stress disorder (PTSD), but she has never been diagnosed with a mental illness that affects her cognitive functioning. *Doc. 17* at 3. She is prescribed medical marijuana and Wellbutrin for PTSD, to aid her in quitting smoking, and to stabilize her mood. *Id.* However, she was not under the influence of any mood-altering drugs during the hearing. *Id.*

Second, Plaintiff's testimony and other documentation support a finding that the adjudication of Plaintiff's incompetence in various criminal cases in state magistrate court was primarily a matter of administrative formality, and that such adjudication is therefore not dispositive here. Documents provided to the Court by defense counsel reflect that as to the incompetence finding that applied to two of the six criminal cases—M-7-MR-2017-00359 and M-7-MR-2017-00398—Plaintiff simply stipulated to

incompetence without undergoing any underlying psychological evaluation. The incompetence finding that applied to the remaining four cases resulted from a psychological evaluation performed by Susan B. Cave, Ph.D. However, Plaintiff described that this evaluation lasted approximately twenty minutes and involved questions regarding the court process and basic information such as the identity of the President and the Governor. *See doc. 17* at 4. Plaintiff confirmed that she answered these questions correctly, but that Dr. Cave informed her that she would assist Plaintiff in avoiding the charges by issuing a finding of incompetence. *Id*.

Third, the following definition of "incapacitated person" under New Mexico law applies to the statute governing the appointment of guardians ad litem in state court:

> F. "incapacitated person" means any person who demonstrates over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that the person is unable to manage the person's personal affairs or the person is unable to manage the person's estate or financial affairs or both;
>
> G. "inability to manage the person's personal care" means the inability, as evidenced by recent behavior, to meet one's needs for medical care, nutrition, clothing, shelter, hygiene or safety so that physical injury, illness or disease has occurred or is likely to occur in the near future;
>
> H. "inability to manage the person's estate or financial affairs or both" means gross mismanagement, as evidenced by recent behavior, of one's income and resources or medical inability to manage one's income and resources that has led or is likely in the near future to lead to financial vulnerability[.]

N.M.S.A. § 45-5-101(F) – (H). *See also* N.M.S.A. § 45-5-301 *et seq.*

Based on Plaintiff's testimony at the hearing, the Court finds that Plaintiff does not meet this definition.  She explained that she lives alone and is able to pay her own bills on a regular basis, including internet, fax, and electricity bills.  *Id.* at 5.  She has had an account with the same electric company for twenty years, and has always timely paid her bills.  *Id.*  She has owned and managed various businesses throughout her life, and successfully worked as a skip tracer for businesses in Carslbad, New Mexico.  *Id.*  She attended and completed college, graduating with a 3.8 GPA.  *Id.*  Though she no longer works and thus depends on Supplemental Security Income to pay for expenses, she spends a majority of her time playing games online, many of which require at least average reasoning abilities.  *Id.* at 6.  For example, Plaintiff testified that just prior to the competency and fairness hearing, she had completed the videogame "Theme Hospital," which requires players to design and operate a hospital.  *Id.*

Fourth, Plaintiff's conduct and demeanor during the hearing were at all times appropriate.  Plaintiff's responses to the Court's questions ably demonstrated her understanding of those questions.  Plaintiff volunteered appropriate and specific examples of her competency when asked, although the prompting by the Court to give such examples was only very general.  *See id.* at 5.  Other illustrative examples of her competency include her description of her interactions with Dr. Cave and her description of the specific issue requiring the replacement of her well.  The description of the interview with Dr. Cave exactly matches the Court's understanding of what a

competence evaluation in the criminal context entails. *Id.* at 4. Moreover, Plaintiff explained in great detail exactly what is causing her well to leak—namely, that the well was set up to accommodate two trailer hookups, but only one trailer is currently attached, causing the second unattached hookup to intermittently pump water into the ground, resulting in flooding of her driveway. *Id.* at 6. Plaintiff's communications with defense counsel to negotiate the settlement further demonstrate that she understands the nature and effect of the litigation. *See generally doc. 15-2*.

Fifth, the Court heard testimony from Theresa Jones, a caretaker placed with Plaintiff through the Addis Home Healthcare Agency, who assists Plaintiff in running errands. *Doc. 17* at 6. Ms. Jones testified that the extent of her knowledge of the settlement agreement was gleaned from conversations with Plaintiff, and that everything Ms. Jones had heard during the hearing matched Plaintiff's previous descriptions. *Id.* Ms. Jones further testified that Plaintiff is always coherent and has explained many of the details of her legal cases to Ms. Jones, and that Ms. Jones has the impression that Plaintiff has an impressive grasp of legal terminology. *Id.* at 6-7. Moreover, Ms. Jones stated that she has observed nothing that would cause her concern that Plaintiff does not understand what is happening, and that she believed Plaintiff is able to understand the settlement agreement based on the fact that Plaintiff had accurately explained its terms to Ms. Jones. *Id.* Finally, Ms. Jones testified that Plaintiff

has always acted in an appropriate and ordinary manner when interacting with the general public. *Id.* at 7.

A trial court has the power to determine whether a litigant is competent. *Bodnar*, 441 F.2d at 1104. Based on the foregoing, the Court finds that Plaintiff is competent to bring this litigation in her own name, and that the appointment of a guardian ad litem is not necessary to protect her interests in the litigation.

### B. Plaintiff is Competent to Enter into a Settlement Agreement.

For many of the same reasons the Court finds Plaintiff competent to bring this litigation in her own name, the Court finds Plaintiff competent to enter into the settlement agreement.

A settlement agreement is a contract. *See Gates Corp v. Bando Chemical Indus., Ltd.*, 4 F. App'x 676, 685-86 (10th Cir. 2001) (unpublished). Thus, state contract law governs the enforceability of a settlement agreement. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000); *see also Rogler v. Standard Ins. Co.*, 30 F. App'x 909, 913 (10th Cir. 2002) (unpublished). The test of mental capacity under New Mexico law "is whether a person is capable of understanding in a reasonable manner, the nature and effect of the act in which the person is engaged." *Matter of Head's Estate*, 615 P.2d 271, 274 (N.M. 1980). Significantly, this standard is essentially the same as the standard governing a litigant's competency to sue under Rule 17—that is, whether she is "mentally competent to

understand the nature and effect of the litigation she has instituted." *Bodnar*, 441 F.2d at 1104 (5th Cir. 1971).

"The presumption is in favor of competency." *Matter of Head's Estate*, 615 P.2d at 274. Even where a person's mental abilities are impaired to some extent, "the fact that the mind is disordered or diseased as to any one of its parts, or, that its healthy operation is in any function disturbed, [does not amount to] a mental incompetence which affects the whole mind." *Id*. Therefore, even assuming *arguendo* that Plaintiff suffers from some kind of mental illness that sometimes impairs her cognitive functioning, if her illness had no influence on her decision to enter into a settlement contract, such illness "would not render [her] legally incompetent, incapable of entering into a civil contract[.]" *Id*. The pertinent question is whether, at the time of entering into a contract, Plaintiff is "enjoying a lucid interval." *Id.* In other words, as long as Plaintiff possesses "sufficient intelligence to understand and appreciate the act [of entering into a contract], the mental ability to execute the instrument remains, and the execution thereof is valid." *Id.* at 275. Of course, the adjudication of Plaintiff's incompetence in the criminal proceedings does affect the applicable presumption. However, "an adjudication of insanity is at most presumptive evidence as to the mental capacity of a person at the time of a transaction." *Id.*

The Court finds that Plaintiff possesses the requisite intelligence to understand and appreciate the consequences of entering into the settlement agreement. This

conclusion is supported by the testimony already set forth in detail above. Moreover, the Court questioned Plaintiff under oath during the hearing regarding her understanding of the terms of the settlement agreement. Plaintiff testified that she understood that, in exchange for the monetary settlement amount she had proposed, she would thereby release all Defendants from all claims she has already brought, including the claims in the pending state cases. *Doc. 17* at 4. She further confirmed her understanding that she was releasing Defendants from all claims that she *could have* brought at the moment the settlement release was signed, based on events that have taken place up to that point. *Id.* Plaintiff testified that she understood she was agreeing not to contact Defendants to obtain records or documents pertaining to events that have already occurred and that underlie her existing or potential claims. *Id*. Finally, Plaintiff testified that she understood she was giving up her right to a jury trial on all existing claims, despite the fact that she could potentially recover a larger monetary amount if she took her claims to trial. *Id*. at 4-5. The Court finds that this testimony confirms that Plaintiff fully understands the nature and effect of entering into the settlement agreement, and that she thus has the requisite mental capacity to do so under New Mexico law. *Matter of Head's Estate*, 615 P.2d at 274.

Notwithstanding this finding, "mental weakness, whether resulting from sickness, age or any other cause which does not totally destroy one's ability to understand the nature and effect of a contract, furnishes no ground for its avoidance in

the absence of evidence showing fraud, duress or undue influence." *Morgan v. Thompson*, 127 P.2d 1037, 1041 (N.M. 1942). But where such "mental weakness" is not by itself sufficient to destroy capacity to contract, a contract may nevertheless be defeated or set aside if the mental weakness is accompanied by "undue influence, inadequacy of price, taking advantage of pecuniary necessities, ignorance and want of advice, misrepresentations or concealments, and the like[.]" *Id.* Therefore, the Court will now address the fairness of the settlement agreement generally, to determine whether Defendants have unduly influenced or otherwise taken advantage of Plaintiff in reaching the proposed settlement agreement.

### C. The Settlement Agreement is Fair and Reasonable in Effect.

The terms of the proposed settlement agreement are straightforward. Specifically, Plaintiff agrees that in exchange for $7,000.00, she will release Defendants from any and all pending and possible claims that she either has brought or may have brought against them, stemming from events occurring up to and including the date of the execution of the agreement. *Doc. 15-1* at 1-2.

When reviewing the fairness of the settlement, the four-factor test set out in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir. 1984) provides a useful structure. These factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether the serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere

possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* at 324. For the reasons explained below, the Court finds that the proposed settlement agreement is fair, reasonable, and in the best interests of the parties, and will therefore approve the agreement as proposed.

    *i.*    *Whether the settlement was fairly and honestly negotiated*

Plaintiff proposed the settlement agreement herself. *Doc. 15-2* at 5. While Plaintiff's primary motivation for seeking the settlement was to address the exigent circumstance of her well needing immediate repair, Plaintiff testified during the hearing that she was also motivated to settle because she would like to put the present controversy with Defendants in the past. Her communication with defense counsel also reflected that secondary motivation. *See id.* at 5, 1; *see also doc. 17* at 5, 7.

Further, the communication between defense counsel and Plaintiff reveals that Plaintiff thoughtfully considered and negotiated Defendants' proposed conditions of settlement. *See doc. 15-2* at 4, 1-2. Specifically, Plaintiff took issue with a particular condition and sought reassurance that the settlement agreement would not encompass any claims that she may bring based on future occurrences. *Id.* at 1-2. Defense counsel provided that reassurance, at which point Plaintiff agreed to the condition and stated that she was "glad this part is over." *Id.* Therefore, the Court finds that Plaintiff was not unduly influenced or pressured by an exigent circumstance to enter into the

15

agreement. Rather, she honestly and fairly negotiated the settlement with a clear understanding of its terms and conditions.

> ii. *Whether serious questions of law or disputes of fact exist, placing the ultimate outcome of litigation in doubt*[2]

Plaintiff acknowledged during the hearing that she has not suffered any physical damages as a direct result of any of Defendants' actions. *Doc. 17* at 2-3. Her Complaint in this case similarly contains allegations suggesting that all of her claimed damages resulted from the actions of an employee of Superior Ambulance, but neither the employee nor Superior Ambulance are parties to this action. *See generally doc. 1-2*. Indeed, Plaintiff asserts in her Complaint that the county sheriffs who arrived at her house to assist with the call for an ambulance "handled the call with 100 percent effectiveness and [with] no incident[.]" *Id.* at 1. Plaintiff's only claims pertaining to Defendants are that they have not assisted her in obtaining information about the incident, and they have threatened to arrest her if she continues to make phone calls seeking such information. *Id.* at 4.

The criminal complaints relating to the events underlying Plaintiff's Complaint and her other pending lawsuits against Defendants show that Plaintiff has been arrested and charged with the offenses of using a telephone to terrify, intimidate, threaten, harass, annoy, or offend in violation of N.M.S.A. § 30-20-12; making false

---

[2] The settlement agreement encompasses all the claims in Plaintiff's pending state court cases against Defendants as well. *See doc. 15-1* at 1-2. The Court's jurisdiction to approve the settlement agreement extends only to those claims in the cases brought in federal court, which include this action as well as Case No. 17cv605 GBW/GJF.

16

complaints by dialing 911 in violation of N.M.S.A. § 63-9D-11.1; and committing a public nuisance in violation of N.M.S.A. § 30-8-1. *See docs. 15-8, 15-9, 15-10, 15-11, 15-12*. These charges stemmed from Plaintiff's repeated and excessive use of 911 to report various incidents and to check on her previous reports, leading Plaintiff to allege that the Sheriff's Office has "refuse[d] to help me when I am in danger, but then become[s] a danger to me [themselves]." *Doc. 1-2* at 5. During the hearing, Plaintiff elaborated on her underlying claims, explaining that she had been stalked, threatened, and harassed for over a decade by private actors whom she met via online gaming communities, and that Defendants had mishandled or otherwise ignored her reports of these incidents of harassment. *Doc. 17* at 2-3. In essence, Plaintiff is bringing a failure to protect claim under 42 U.S.C. § 1983. *See, e.g.*, *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 194-202 (1989) (discussing the limited circumstances under which a government official's failure to protect an individual from harm constitutes a denial of due process).

However, Plaintiff has not alleged any physical damages that have occurred as a direct result of such failure to protect. Moreover, Plaintiff cannot state a due process claim stemming from a failure to protect unless she could show that some damage resulted from a "state-created danger" or that some other exception applies; the state has no affirmative duty to protect against private harm. *See id.* at 201. Therefore, serious questions of law exist as to whether Plaintiff's claims could survive Defendants' pending Motion to Dismiss for failure to state a claim (*doc. 5*), placing the ultimate

outcome of the litigation in doubt. It is thus in Plaintiff's best interest to seek a monetary settlement now. It is similarly in Defendants' best interest to pay a relatively small amount, now, in order to avoid accruing greater costs and fees in the future in order to continue defending against this litigation. This factor thus counsels in favor of approving the settlement agreement.

>    iii.    *Whether the value of an immediate recovery outweighs the mere possibility of future relief following protracted litigation*

Plaintiff testified directly to this factor during the hearing. Specifically, she stated that she understood she was forfeiting her right to have her claims heard and decided by a jury, despite the possibility that she may receive a larger amount at trial. *See doc. 17* at 4-5. She explicitly confirmed that she was partly motivated to settle because the agreement ensured she would receive money sooner than if she continued to engage in potentially lengthy federal litigation. *Id.* at 5. Moreover, the value of an immediate recovery to Plaintiff is enormous due to the exigent circumstance of her leaking well. *Id.* at 6. During their negotiations, Plaintiff expressed that she was willing to offer the amount of $7,000.00 because of this circumstance. *Doc. 15-2* at 4. As already noted, Plaintiff seeks to have a "fresh slate" with Defendants and to immediately recover a monetary settlement now in order to focus on other litigation related to the individuals who have threatened and harassed her online. *Doc. 17* at 5; *see also doc. 15-2* at 1 (stating that Plaintiff has agreed with Defendant Chaves County Sheriff Britt Snyder to have a "fresh slate"). Therefore, this factor also counsels in favor of approval

of the settlement.

> iv. *The judgment of the parties and their counsel that the settlement is fair and reasonable*

In the Motion for Review and/or Approval of Settlement (*doc. 15*), defense counsel expressed his judgment that the settlement is fair and reasonable and fully explained the bases for his opinion. *See generally doc. 15-1*. During the fairness hearing, Plaintiff testified under oath that she fully understands the terms of the settlement agreement. *Doc. 17* at 4-5. Further, she expressed an understanding that if the Court approves the settlement agreement, this settlement disposes of all existing and potential claims by Plaintiff against Defendants arising from the allegations in the Complaint. *Id.*

As already discussed, Plaintiff is the party who determined and proposed the settlement amount. She testified during the hearing that she believed $7,000.00 was a fair valuation of the emotional and physical distress she experienced as an indirect result of Defendants' alleged actions. *Id.* at 2.

Plaintiff has expended no money on an attorney in this case, and therefore all proceeds of the settlement will go directly to her. By virtue of the agreement, Defendants are able to avoid protracted litigation and further costs to them, and they have further secured Plaintiff's agreement that she will no longer contact the Sheriff's Office to seek information on any existing reports or previous incidents. The benefits to both parties are substantial, and the amount of the settlement is fair given the relative strength of Plaintiff's claims. Therefore, the Court finds that all parties and defense

counsel believe that the settlement is fair and reasonable, and finds that such reasoning is well-founded.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff is competent to sue in her own name and to enter into contracts. Appointment of a guardian ad litem is thus unnecessary under Rule 17(c). However, even if Plaintiff were incompetent to bring suit in her own name under Rule 17, the Court has conducted its own inquiry into the fairness of the settlement agreement in order to ensure that Plaintiff's interests are adequately protected. Based on that analysis, the Court independently finds that the settlement agreement proposed by the parties satisfies the four *Jones* factors and is thus fair and reasonable. Defendants' Motion for Review and/or Approval of Settlement (*doc. 15*) is therefore GRANTED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**